# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

RIVERKEEPER, INC.,

                     Plaintiff,

      v.

ACE SCRAP RECYCLING LLC,

                  Defendant.

-----------------------------------------------------------------

Case No. 7:19-cv-6699

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**

(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387)

 

Plaintiff Riverkeeper, Inc. by and through its counsel, hereby alleges:

## I.

## INTRODUCTION

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*. (the "Clean Water Act," "the Act," or "CWA") to address and abate Defendant's ongoing and continuous violations of the Act.

2.      Defendant operates a scrap metal recycling facility located at 140 South Terrace Avenue, Mt. Vernon, NY 10550 (the "Facility"). Defendant is subject to, covered by, and must comply with the General Permit for the Discharge of Stormwater Associated with Industrial Activity ("the General Permit") issued by the New York State Department of Environmental Conservation ("DEC"). Defendant has violated the General Permit and the CWA by 1)

submitting reports to the DEC containing false statements, and 2) failing to implement best management practices at the Facility as required by law.

3. Stormwater runoff is one of the most significant sources of water pollution in the nation, comparable to, if not greater than, contamination from industrial and sewage sources. With every rainfall event, hundreds of millions of gallons of polluted rainwater pour into the Bronx River, New York Harbor, Long Island Sound, and other receiving waters in this District. The State of New York has designated more than 7,000 river miles, 319,000 acres of larger waterbodies, 940 square miles of bays and estuaries, and 592 miles of Great Lakes shoreline in the State as "impaired," or not meeting water quality standards, and unable to support beneficial uses such as fish habitat and water contact recreation. In many of these waters, state water quality standards for metals, oil and grease, nutrient enrichment and oxygen depletion, inorganic pollutants, pathogens, taste, color, odor, and other parameters are consistently exceeded. For the overwhelming majority of water bodies listed as impaired, stormwater runoff is cited as a primary source of the pollutants causing the impairment.

4. Defendant's stormwater discharges contribute to this endemic stormwater pollution problem. Defendant engages in industrial activities such as the purchasing, collection, processing, storage, reshipment and resale of scrap metal and other recyclable wastes. As precipitation comes into contact with pollutants generated by these industrial activities, it conveys those pollutants to nearby surface waters. Contaminated stormwater discharges such as those from the Facility can and must be controlled to the fullest extent required by law in order to allow these water bodies a fighting chance to regain their health.

## II.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1) and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

6.    Plaintiff has complied with the notice requirements of Section 505(b)(1) of the CWA, 33 U.S.C. § 1365(b)(1).

7.    On May 14, 2019 Plaintiff provided notice of Defendant's violations of the Act and of its intention to file suit against Defendant to: Defendant; the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region II; and the Commissioner of DEC, as required by the Act, 33 U.S.C. § 1365(b)(1)(A), and the corresponding regulations at 40 C.F.R. §§ 135.1 to 135.3. A true and correct copy of Plaintiff's notice letter is attached as Exhibit A and is incorporated by reference.

8.    More than sixty days have passed since the notice letter was served on Defendant and the state and federal agencies.

9.    Neither the United States nor the State of New York has commenced or is diligently prosecuting a civil or criminal action to redress the violations alleged in this complaint. *See* 33 U.S.C. § 1365(b)(1)(B).

10.    This action is not barred by any prior administrative penalty under Section 309(g) of the Act. *See* 33 U.S.C. § 1319(g).

11.    Venue is proper in the Southern District of New York pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b)(2) because the source of

the violations complained of is located, and the acts and omissions giving rise to the claims occurred, within this judicial district.

## III.

## PARTIES

12.     Plaintiff Riverkeeper, Inc. is a not-for-profit environmental organization organized under the laws of the state of New York, with its principal place of business in Ossining, New York.  Riverkeeper's mission includes safeguarding the ecological and biological integrity of the Hudson River and its tributaries. Riverkeeper was originally founded by the Hudson River Fisherman's Association, a group of fishermen concerned about the ecological state of the Hudson River, and the effect of its polluted and degraded condition on fish. Riverkeeper achieves its mission through public education, advocacy for sound public policies and participation in legal and administrative forums. Riverkeeper has more than 3,400 members, including a number of members that live in close proximity to the Bronx River, which is polluted by industrial stormwater runoff from the Defendant's Facility.

13.     Riverkeeper's members use and enjoy the waters that Defendant has unlawfully polluted and are unlawfully polluting. Many of Riverkeeper's members live near the Bronx River, participate in community activities focused around the Bronx River, and recreate upon the Bronx River or waterways into which the Bronx River flows. Water quality in the Bronx River directly affects the health, recreational, aesthetic, commercial, and environmental interests of Riverkeeper's members. The interests of Riverkeeper's members are adversely affected by Defendant's failure to comply with the requirements of the Clean Water Act. Riverkeeper is also hindered in carrying out its mission and is adversely affected by Defendant's failure to provide information that it is legally obligated to provide regarding its stormwater pollution.

14. The relief sought herein will redress the harms to Plaintiff and its members caused by Defendant' activities. Continuing commission of the acts and omissions alleged herein will irreparably harm Plaintiff and its members, for which harm they have no plain, speedy or adequate remedy at law.

15. Plaintiff is informed and believes, and thereupon alleges, that Defendant Ace Scrap Recycling LLC ("Ace Scrap") is a corporation incorporated under the laws of the State of New York, which owns and operates a local scrap metal recycling facility at 140 South Terrace Avenue, Mt. Vernon, NY 10550.

## IV.

## STATUTORY AND REGULATORY BACKGROUND

### The Clean Water Act

16. Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." CWA Section 101(a), 33 U.S.C. § 1251(a). In furtherance of this goal, the Act provides a comprehensive approach for the regulation of pollution discharged into the waters of the United States.

17. The CWA prohibits the discharge of pollutants from a "point source" into the waters of the United States except in compliance with a NPDES permit issued under Section 402 of the Act. 33 U.S.C. § 1342.

18. Section 402(p) of the Act establishes a framework for regulating stormwater pollution under the NPDES program, including stormwater discharges associated with industrial activity. 33 U.S.C. § 1342(p). Pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, EPA promulgated stormwater discharge regulations at 40 C.F.R. § 122.26.

19.     In promulgating stormwater regulations, EPA cited abundant data showing the harmful effects of stormwater runoff on rivers, streams and coastal areas across the nation.  In particular, EPA found that runoff from industrial facilities contained elevated pollution levels and that, on an annual basis, pollutant levels in stormwater runoff can exceed by an order of magnitude the levels discharged by municipal sewage treatment plants.  55 Fed. Reg. 47990, 47991 (Nov. 16, 1990).

20.     A NPDES permit requires dischargers of pollution to comply with various limitations and conditions, such as monitoring and reporting requirements.

21.     The CWA and its implementing regulations require dischargers to monitor and report any regulated pollution.  Under the CWA, whenever necessary to carry out the Act's objectives, owners or operators of point sources that discharge pollutants must "(i) establish and maintain such records, (ii) make such reports, (iii) install, use, and maintain such monitoring equipment or methods" and "(iv) sample such effluents" as EPA may reasonably require. 33 U.S.C. § 1318(a)(A). This self-monitoring and reporting by dischargers allows the government to determine, among other things, whether the discharger is in violation of effluent limitations applicable to the discharge. *See id.* § 1318(a).

22.     The Clean Water Act carries criminal penalties for any person who knowingly makes false statements in connection with a NPDES permit, or who negligently or knowingly violates permit conditions or other specified sections of the Act, including provisions related to monitoring and reporting. *Id.* § 1319(c).

23.     NPDES permits are issued by EPA or by States that have been authorized by EPA to act as NPDES permitting authorities, provided that the state permitting program ensures

compliance with the procedural and substantive requirements of the CWA.  *See* 33 U.S.C. § 1342(b)(1); 40 C.F.R. § 123.25(a).

24.     In New York, DEC has been delegated the authority to issue NPDES permits.

**New York's General Permit for the Discharge
of Stormwater Associated with Industrial Activity**

25.     As a delegated state NPDES permitting agency, DEC has elected to issue a statewide general permit for industrial stormwater discharges in New York.  The current version of the "Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity," Permit No. GP-0-17-004 (the "General Permit") came into effect on March 1, 2018.[1]

26.     In order to comply with the General Permit, a facility owner or operator must reduce the discharge of pollution from the facility to the extent practicable through use of the best available technology.  The owner or operator also must comply with numeric effluent limitations on the quantity and concentration of pollutants discharged from the facility established in the General Permit, as well as narrative ("non-numeric") effluent limits established in the General Permit.  Facility owners and operators generally reduce pollution and comply with effluent limitations by adopting "best management practices" that reduce the discharge of polluted stormwater.  Best management practices include both changes to industrial practices and activities (for example, more frequent inspections and site clean ups) and concrete, structural changes to the property that prevent stormwater from coming into contact with pollutants in the first place and that otherwise reduce the amount of polluted stormwater eventually discharged from the facility.

_____

[1] This General Permit replaces earlier general permits for discharges of stormwater associated with industrial activity, most recently Permit No. GP-0-12-001.

27. The General Permit requires that all covered facilities conduct multiple types of analytical monitoring. In particular, all facilities authorized under the General Permit must:

(a) collect and analyze stormwater samples for each outfall at least annually;

(b) conduct visual monitoring of stormwater discharges at least quarterly;

(c) perform an annual dry weather inspection to detect non-stormwater discharges;

(d) inspect, sample and monitor discharges from coal pile runoff;

(e) inspect, sample and monitor discharges from secondary containment structures and transfer areas;

(f) document storm events during which any samples are taken;

(g) document all of these monitoring activities;

(h) keep records of the monitoring with the Facility's stormwater pollution prevention plan (SWPPP); and

(i) submit an annual report to DEC accompanied by a discharge monitoring report detailing the results of all required stormwater samples, as well as reports that documents any instance of non-compliance with benchmarks or numeric effluent limitations.

28. Appendix H of the General Permit, Conditions 7, 8, and 9 require Defendant not to submit false information to DEC and to truthfully report the conditions at the Facility. All signed submissions to DEC must be certified as to their truthfulness. Permit Appx. H 7(g).

**CWA Citizen Enforcement Suits**

29. Under CWA Section 505(a)(1), any citizen may commence a civil action in federal court on his own behalf against any person who is alleged to be in violation of an "effluent standard or limitation" under the CWA. 33 U.S.C. § 1365(a)(1).

30.     Such enforcement action under CWA Section 505(a), 33 U.S.C. § 1365(a), includes an action seeking remedies for an unpermitted discharge in violation of Section 301 of the CWA, 33 U.S.C § 1311, as well as for violation of a condition of a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. *See* CWA Section 505(f), 33 U.S.C. § 1365(f).

31.     Declaratory relief in such cases is authorized by 28 U.S.C. § 2201–02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration).

32.     Injunctive relief is authorized by Section 505(a) of the Act, 33 U.S.C. § 1365(a).

33.     Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day per violation for violation occurring after December 6, 2013, but before November 2, 2015, and $53,484 per day per violation for all violations of the Act occurring after November 2, 2015. *See* 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1–19.4.

## V.

## STATEMENT OF FACTS

### Defendant Must Comply with the Requirements of the General Permit

34.     Defendant is covered by the General Permit for its discharges of stormwater associated with industrial activity from the Facility to the Bronx River.  Defendant's General Permit number is NYR00E876.

35.     Because Defendant recycles waste materials, its industrial activity is covered under Standard Industrial Classification ("SIC") Code 5093, and subject to Sector N of the General Permit.

36.     As required by Appx. H.1 of the General Permit, Ace Scrap must comply at all times with the basic requirements of the General Permit, along with the specific sector N requirements.

37.     Appendix H of the General Permit, Conditions 7, 8, and 9 require Defendant to truthfully report the conditions at the Facility and prohibit the submission of false information to DEC.

38.     Parts IV and VI of General Permit require Defendant to accurately monitor the Facility, sample discharges, and submit reports to DEC.

39.     In addition to annual reporting, because Defendant discharges to an impaired waterbody – the Bronx River – Defendant is required to submit quarterly discharge monitoring reports to DEC.

40.     Part VI.A.1. of the General Permit requires Defendant to submit annual reports to DEC which detail CWA compliance efforts at the Facility.

**Defendant Falsely Reports to DEC That It Does Not Discharge Stormwater and Fails to Sample Quarterly**

41.     From at least 2011 through the present, Defendant has routinely submitted quarterly discharge monitoring reports to DEC stating that the Facility has not discharged any stormwater associated with industrial activity from the Facility's permitted outfall.

42.     From at least 2011 through the present, Defendant has routinely submitted annual reports which state that the facility does not discharge any stormwater associated with industrial activity from the Facility.

43.     However, the Facility routinely discharges stormwater associated with industrial activity during qualifying storm events.

44.     Defendant has not taken or analyzed water quality samples as required by the General Permit. *See* General Permit, Part VII (requirements for Sector N).

**Defendant Does Not Implement Best Management Practices at the Facility.**

45.     Defendant has failed, and continues to fail, to implement and maintain adequate control measures and Best Management Practices ("BMP") at the Facility as required by the General Permit.

46.     The Facility lacks pollution prevention controls such as stormwater containment or treatment technology.  Stormwater samples from the Facility revealed high levels of Aluminum, Cadmium, Chromium, Copper, Iron, Lead, and Zinc that exceeded the sector specific effluent benchmarks.  *See* Exhibit A at 3.  This is a clear indicator that Best Management Practices and adequate control measures are not being implemented at the Facility.

## VI.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### Submitting False and Incorrect Information to the DEC
### (Violations of 33 U.S.C. §§ 1342)

47.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

48.     Defendant has submitted to DEC quarterly discharge monitoring reports and annual reports that contain materially false statements – namely, that the Facility does not discharge stormwater associated with industrial activity.

49.     Defendant knew or should have known that the information contained in its quarterly discharge monitoring reports and annual reports was false but did not correct this information.

50.     Sections 505(a)(1) and (f)(6) of the CWA, 33 U.S.C. § 1365(a)(1) and (f)(6), state that any citizen may commence a civil action against any person alleged to be in violation of an "effluent standard or limitation," which includes violation of a permit condition.

51.     Section 502(5) of the CWA, 33 U.S.C. § 1362(5), defines "person" to include "an individual, corporation, partnership [or] association."

52.     Appendix H of the General Permit, Conditions 7, 8, and 9 require Defendant to truthfully report the conditions at the Facility and prohibit Defendant from submitting false information to DEC.

53.     Section 309(c)(4) of the CWA, 33 U.S.C. § 1319(c)(4), prohibits making "any false material statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under [the CWA.]"

54.     Each and every occasion on which Defendant submitted quarterly monitoring reports and annual reports that contain materially false statements to DEC is a separate and distinct violation of Sections 309 and 402 of the CWA, 33 U.S.C. §§ 1319, 1342.

55.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

56.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

**Failure to Conduct Routine Site Inspections and to Comply with Monitoring, Recordkeeping, and Reporting Requirements**

**(Violations of 33 U.S.C. §§ 1311 and 1342)**

57.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

58.     The General Permit requires industrial discharges to conduct and document comprehensive site inspections at appropriate intervals, but in no event less frequently than once a year. The Inspection must ensure that all stormwater discharges are adequately controlled and that all BMPs function as expected. Records of this inspection must be kept for five years. *See* General Permit, Part IV.

59.     In addition, qualified facility personnel must carry out routine inspections at least quarterly. *See* General Permit, Part IV.E. During these inspections, personnel must evaluate conditions and maintenance needs of stormwater management devices, detect leaks and ensure the good condition of containers, evaluate the performance of the existing stormwater BMPs described in the SWPPP, and document any deficiencies in the implementation and/or adequacy of the SWPPP. *See* General Permit, Part IV.E. Such deficiencies must then be addressed through corrective actions.

60.     The General Permit requires industrial dischargers to conduct multiple types of analytical monitoring as described in Part IV.D of the General Permit and must keep records of their monitoring efforts.  The monitoring required under the General Permit includes both various visual inspections and collection and laboratory analysis of water quality samples.

61.     In addition, Defendant engages in industrial activities that fall within Sector N of the General Permit's classifications of industrial activity, and therefore must also conduct additional analysis of water quality samples for a range of pollutant parameters as set forth in Part VII of the General Permit.  See General Permit, Part VII (requirements for Sector N).  These include:

a.   Total Suspended Solids

b.   Chemical Oxygen Demand,

c.   Oil and Grease,

d.  Total Recoverable Aluminum,

e.  Total Recoverable Cadmium,

f.  Total Chromium,

g.  Total Recoverable Copper,

h.  Total Recoverable Iron,

i.  Total Recoverable Lead, and

j.  Total Recoverable Zinc,

62.     Plaintiff is informed and believes, and thereupon alleges that, as of the filing date of this complaint, Defendant has not conducted any of the site monitoring and testing required by the General Permit.

63.     Defendant has failed, and continues to fail, to comply with the monitoring and testing requirements of the General Permit.

64.     Plaintiff is informed and believes, and thereupon alleges that, as of the filing date of this complaint, Defendant also has failed to retain records and submit monitoring reports as required by the General Permit.

65.     Plaintiff is informed and believes, and thereupon alleges that, as of the filing date of this complaint, Defendant has failed to comply with the record keeping, monitoring, and reporting requirements of the General Permit by inaccurately reporting to DEC that the Facility is in compliance with the General Permit and that the Facility has not discharged stormwater associated with industrial activity from at least 2011 through the present.

66.     Each and every day on which Defendant fails to comply with any of the General Permit's monitoring, testing, recordkeeping and reporting requirements is a separate and distinct violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311, 1342.

67.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

68.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION

**Failure to Implement Adequate Control
Measures and Best Management Practices
(Violations of 33 U.S.C. §§ 1311, 1342)**

69.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

70.     The General Permit, in Parts II and VII, requires that Defendant implement mandatory general and sector-specific control measures called Best Management Practices in order to minimize the discharge of pollutants from the Facility.

71.     The selected measures must reduce the discharge of pollution from the Facility to the extent practicable through use of the best available technology for the industry in order to comply with both numeric and narrative effluent limits contained in the permit.

72.     Because the industrial activities carried out at the Facility are categorized in SIC Code 5093, Defendant must also implement the sector-specific control measures specified in Part VII of the General Permit for Sector N.

73.     Defendant has not implemented and maintained adequate control measures or BMPs as required by the General Permit.

74.     Defendant has failed, and continues to fail, to implement and maintain adequate control measures and BMPs at the Facility as required by the General Permit.

75.     These failures are evident from, among other things, samples showing that stormwater discharged from Defendant's facility significantly exceeds sector specific

benchmarks set in the General Permit for Aluminum, Cadmium, Chromium, Copper, Iron, Lead, and Zinc. *See* Exhibit A at 3.

76.     Each and every day on which Defendant fails to comply with the General Permit's control measure and BMP requirements is a separate and distinct violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311, 1342.

77.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

78.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

## VII.

## PRAYER FOR RELIEF

79.     Plaintiff Riverkeeper respectfully requests that this Court grant the following relief, as allowed by 33 U.S.C. § 1365(a) and 28 U.S.C. §§ 2201(a) and 2202:

   a. Declare Defendant to have violated and to be in violation of the Act as alleged herein;

   b. Enjoin Defendant from discharging pollutants from the Facility except as authorized by and in compliance with the General Permit;

   c. Order Defendant to comply with the requirement in the General Permit to certify that all submissions to DEC are true and accurate;

   d. Order Defendant comply with all of the monitoring and reporting requirements in the General Permit;

   e. Order Defendant to implement Best Management Practices as required by the General Permit;

f. Order Defendant to take appropriate actions to remediate the harm caused by the violations of the General Permit and the CWA, to the extent possible;

g. Order Defendant to pay civil penalties of up to $37,500 per day per violation for violation occurring after December 6, 2013, but before November 2, 2015, and $53,484 per day per violation for all violations of the Act occurring after November 2, 2015. *See* 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1–19.4.

h. Order Defendant to pay the costs of litigation, including Plaintiff's reasonable investigative costs, attorneys' fees, witness, and consultant fees, and other costs, in accordance with Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

i. Award any such other and further relief as this Court may deem appropriate.


Dated this 18th day of July                    Respectfully submitted,
New York, New York


By:  s/ Michael DiGiulio

Michael DiGiulio

SUPER LAW GROUP, LLC
180 Maiden Lane, Suite 603
New York, NY 10038
Tel. (212) 242-2355
mike@superlawgroup.com

*Attorney for Plaintiff*